Christian R. Oehm, Esq. (CO2182)
**LINDGREN, LINDGREN, OEHM & YOU, LLP**
Bridge Pointe – Bldg. G
246 Bridge Street
Metuchen, New Jersey 08840
(t): (732) 243-9934
(f): (732) 218-3792
(e): christian@llowlaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELYN REAVES, : | |
| : | |
| Plaintiff, : | |
| : | Case No.: 3:16-cv-01767-PGS-LHG |
| v. : | |
| : | *Civil Action* |
| PETSMART, INC., TIFFANY HILL, : | |
| individually, and MARCO : | |
| JURIJEVICH, individually, : | **VERIFIED FIRST AMENDED COMPLAINT** |
| : | |
| Defendants. : | |

Plaintiff Jacquelyn Reaves, for her Amended Complaint against Defendants PetSmart, Inc., Tiffany Hill, and Marco Jurijevich, by and through her attorneys, Lindgren, Lindgren, Oehm & You, LLP, states as follows:

### PRELIMINARY STATEMENT

1.  This case arises out of the unlawful treatment, employment practices, and actions perpetrated by Defendants upon Plaintiff which caused a violation of Plaintiff's rights and damage.

2.  Defendants actions resulted in retaliation against Plaintiff ultimately leading to her wrongful discharge contrary to State and Federal Law, public policy, and PetSmart's Corporate Policy.

3.    Plaintiff complains pursuant to §42 U.S.C. 1981, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978, and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, *et. seq.* ("NJLAD"), the New Jersey Conscientious Employment Protection Act, N.J.S.A. 34-19-1 *et seq.* ("CEPA")and seeks damages to redress the injuries she has suffered as a result of being subjected to a hostile work environment, discriminated against, retaliated against, and harassed solely due to her race, ethnicity, and/or gender.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343.

5.    This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1376.

6.    Venue is proper pursuant to 28 U.S.C.  § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

7.    Plaintiff filed complaint with the Equal Employment Opportunity Commission on or about December 03, 2015.

8.    On April 07, 2016, the Equal Employment Opportunity Commission issued its Dismissal and Notice of Rights letter providing Plaintiff with her notice of right to sue.

## THE PARTIES

9.    Plaintiff Jacquelyn Reaves (hereinafter, "Plaintiff") is an individual residing in the State of New Jersey, County of Somerset.

10. Upon information and belief, Defendant PetSmart, Inc. (hereinafter, "PetSmart") is a corporation licensed to do business in the State of New Jersey with a location at 145 Promenade Blvd. Bridgewater, New Jersey 08807.

11. Upon information and belief, Defendant Tiffany Hill (hereinafter, "Hill") is an individual residing in the State of New Jersey, County of Somerset.

12. Upon information and belief, Defendant Marco Jurijevich (hereinafter, "Jurijevich") is an individual residing in the State of New Jersey, County of Somerset.

13. Venue is proper in this Court because (1) parties are located and/or reside in the Somerset County; and (2) the acts and circumstances upon which Plaintiff's claims are based arose and/or occurred in Somerset County.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

14. Plaintiff began employment on or about May 04, 2015 with PetSmart located in Bridgewater, New Jersey as an "Early Morning Stocker."

15. As a stocker, Plaintiff's duties included stocking the shelves of PetSmart with the goods offered for sale to consumers.

16. PetSmart also required that all stockers must know how to operate the cash register to assist in a in worst case scenario. Some of the stockers refused to work the register but were not reprimanded for their refusal.

17. At the time of her hire, Plaintiff was compensated at a rate of $10.00 per hour.

18. Plaintiff was eventually transferred from the early morning shift to the late afternoon to closing shift, and then to the midday shift at PetSmart.

19. During her employment, Plaintiff was an exemplary employee and was provided with a raise on three (3) separate occasions following positive performance reviews.

20.  During her employment, Defendant Jurijevich told Plaintiff that management referred to her as, "the undercover boss" based on her credentials.

**Unequal Pay**

21.  Although she was hired and compensated as a stocker, Plaintiff was given managerial job duties and assignments beginning in the fall of 2015.

22.  Despite her managerial responsibilities, Plaintiff was not compensated as a manager, but rather continued to be compensated as a stocker.

23.  As part of her managerial responsibilities, Plaintiff was required to keep track of the store's manifest, operate the forklift despite training, merchandising, managing the truck(s), managing inventory, excessive register work, engaging in customer service, bagging animals and pets such as fish and insects, rotating product, and conducting merchandise resets.

24.  At times, Plaintiff was required to conduct these additional responsibilities all on her own.

25.  Plaintiff was often required to complete these additional managerial tasks responsibilities all the while as PetSmart's managers were otherwise engaged in personal conversation and/or text message conversations.

26.  The other stockers were not required to complete tasks and responsibilities as Plaintiff.

27.  On or about November 7, 2015, Plaintiff complained to PetSmart's human resource department that she was not being compensated as a manager despite being assigned managerial responsibilities.

28.  On or about mid-November 2015, Plaintiff was compensated for the managerial duties she performed, in the absence of equal pay based upon the findings of an internal investigation

conducted by Chris Stillman (hereinafter, "Mr. Stillman"), and Sean Parker (hereinafter, "Mr. Parker"), of PetSmart's human resource department.

29. Following her complaint, Plaintiff experienced an adverse change in her work environment.

30. Following her complaint, Plaintiff was not required to continue to undertake managerial responsibilities and duties.

31. Despite the fact that PetSmart found her capable and fit of performing managerial duties, in or about July 2015 through November, PetSmart selected an employee known to Plaintiff as Ms. Emily and commonly referred to as Emma (hereinafter, "Ms. Emma"), for promotion and placement as a manager.

32. Ms. Emma was hired as a cashier and later promoted to stocker some months following Plaintiff's hire.

33. Upon information and belief, Ms. Emma, possessed less experience, is less qualified, and is Caucasian, whereas Plaintiff is not Caucasian and is of African American descent.

34. Plaintiff was available and capable of being trained and/or promoted to the managerial position provided to Ms. Emma; however, was not made aware that the position was open or that she may apply for it.

35. All immediate managers and supervisors at the PetSmart location in Bridgewater, New Jersey where Plaintiff was employed are Caucasian.

36. Upon information and belief, Plaintiff was not considered for the promotion based upon her race and/or ethnicity.

**Factual Allegations of and Concerning Defendant Tiffany Hill**

37. In or about June or July of 2015, Defendant Hill took on the role of manager and/or supervisor over Plaintiff with the authority to assign tasks to Plaintiff.

38. Defendant Hill, like the other managers at the Bridgewater PetSmart, is Caucasian.

39. Defendant Hill disparately treated Plaintiff as compared to her Caucasian counterparts and colleagues.

40. Defendant Hill would assign Plaintiff to undertake tasks that were nearly physically impossible for Plaintiff to complete on her own.

41. Despite this, Plaintiff always did her best to complete the work that was assigned.

42. While Plaintiff did her best to complete the nearly physically impossible work assigned solely to her, she observed that Defendant Hill would assign similar tasks to two (2) or three (3) Caucasian employees.  For example, prior to Plaintiff's complaint, Defendant Hill would assign Plaintiff to take out bulk amounts of trash on my own, which normally involved the work of three (3) to five (5) men on the stock team.

43. Defendant would often refuse Plaintiff's breaks, whereas the Caucasian employees were permitted to take theirs.

44.  Typically, everyone would coordinate breaks, and stockers would take them when they wanted; however, Defendant Hill would frequently assign additional tasks for Plaintiff to complete which prevented her from being able to take a break, or she would flat out deny the Plaintiff to take a break.

45. If and when Caucasian employees refused to complete assigned tasks, they were not reprimanded or terminated.  Caucasian employees were not denied the opportunity to take breaks.

**Allegations of and Concerning Defendant Marco Jurijevich**

46. At all times during Plaintiff's employment at PetSmart, Defendant Jurijevich was Plaintiff's manager and was authorized to assign tasks, duties and work schedule.

47. Defendant Jurijevich harassed and caused distress to Plaintiff by (1) asking her if she needed rides home when he was fully aware that she had means of transportation to and from work; (2) engaging her in making "fist-bumps" which Plaintiff considered to be awkward, uncomfortable, and unwelcome; and (3) telling Plaintiff that she "reminded him of Raquel Welsh"; (4) asking Plaintiff into his office, and to sometimes leave her shift and go home for no reason at all; and (5) attempting to engage in awkward, uncomfortable and unwelcome conversation with the Plaintiff, regarding the justification of murder.

48. Defendant Jurijevich would make chauvinistic remarks which made Plaintiff feel uncomfortable and demeaned.

49. Upon information and belief, Defendant was sexually attracted to Plaintiff.

50. Defendants Jurijevich made unwanted and unwelcomed sexual advances toward Plaintiff which caused her to feel distressed and uncomfortable.

51. On or about October 30, 2015, Plaintiff approached Defendant Jurijevich regarding her interest in the applying for the Human Resource Business Partner position at PetSmart's headquarters in Phoenix, AZ.

52. Plaintiff is well-educated, highly intelligent, and credentialed and therefore believed that she would be well suited for the job.

53. Defendant Jurijevich told Plaintiff that management liked her very much, that he and the other managers are well-known and liked by "Corporate," and that they would all put in a good word. Defendant Jurijevich then asked Plaintiff if she needed a ride home from work, which Plaintiff found strange, and at made her uncomfortable.

54. Defendant Jurijevich and Plaintiff agreed that she would prepare and submit a Career Portfolio to him.

55. Plaintiff was left feeling optimistic about her possibilities of the obtaining the new Human Resource Business Partner position at Corporate Headquarters.

56. Plaintiff provided a copy of her Career Portfolio on or about November 06, 2015.

57. Then, on November 07, 2015 Defendant Jurijevich called Plaintiff to his office first alone to congratulate her on being awarded Employee of the Month for October 2015.  Defendant Jurijevich informed Plaintiff she would receive a raise effective November 09, 2015 based upon the mistaken belief that she was forklift certified.

58. Upon information and belief the Caucasian employees were trained to properly use the forklift whereas Plaintiff was denied training even though her managers gave her a forklift key, and told her to rotate product.

59. Then, at that same time and in the presence of another manager, Laurie Evers, Defendant Jurijevich berated and demeaned Plaintiff for not knowing the managerial process to diffuse hostile customers.

60. Defendant Jurijevich's demeaned and berated Plaintiff and caused her to breakdown and cry in his office.

61. At that time Plaintiff was not a manager, was not compensated as a manager, nor did she have access to PetSmart managerial processes or protocols.

62. Defendant Jurijevich knew that Plaintiff was not a manager, was not compensated as a manager, and did not have access to PetSmart's managerial processes or protocols.

63. This incident happened directly after Plaintiff denied Defendant's inappropriate sexual advancement on or about October 30, 2015.

64.  Upon information and belief Defendant Jurijevich did not berate, demean, or reprimand any of the Caucasian stockers for not knowing managerial processes.

65.  Following this meeting in Defendant Jurijevich's office, Plaintiff asked permission to be excused from work early and filed a complaint with Mr. Stillman and Mr. Parker of PetSmart's human resource department.

66.  On or about November 28, 2015, Defendant Jurijevich told Plaintiff that he wanted to spend time with her one-on-one for a couple of hours to train her on the forklift.  This made Plaintiff feel distressed and uncomfortable.

67.  Upon information and belief, Defendant Jurijevich had an obsession with Plaintiff and would watch her on camera from his office.

68.  Upon information and belief, it was commonly known among the management and other workers that Defendant Jurijevich would sit and watch Plaintiff on camera from his office.

**Events Leading to Plaintiff's Wrongful Discharge**

69.  In or about the beginning of December, following Plaintiff's complaint to PetSmart human resource department, Plaintiff was again asked to assist an agitated customer while Defendant Jurijevich was assisting another customer.

70.  This agitated customer demanded that a batch check be completed on a pet food that was previously purchased and had caused her pet to become ill.

71.  A batch check is a manager's job and not within the scope of the job duties of a stocker. It would require her to contact the manufacturer, and possibly conduct additional background work, outside of her scope of duties as a stocker.

72.  Concerned that she was again being asked to perform managerial tasks for which she would not be compensated, and having been denied an opportunity to apply for or be promoted

to the recently created managerial position in favor of a less experienced Caucasian co-worker, Plaintiff voiced her concern and asked that she not be assigned work falling within the functions and duties of managers.

73. Defendant Jurijevich called Plaintiff into his office along with Ms. Evers to have a "conversation."

74. Defendant Jurijevich asked Plaintiff to have a seat while he and Ms. Evers remained standing, and closed the door to the tiny office.

75. Plaintiff was made to feel uncomfortable and intimidated.

76. Plaintiff informed that it was improper to require her to complete managerial work in the absence of equal pay.

77. Defendant Jurijevich and/or Ms. Evers demeaned,  berated, and intimated Plaintiff by yelling at her.

78. In response to Plaintiff voicing her concern and reasonable request, Defendant Jurijevich told Plaintiff to "go home," and relieved her of her duties for the day, albeit, with pay.

79. Thereafter, Defendant Jurijevich changed Plaintiff's work schedule after she refused his sexual advancement, and filed her complaint with PetSmart's human resource department.

80. As a result, PetSmart required that another manager, Mr. Andy, be in charge of Plaintiff's work schedule and return her back to the midday shift.

81. On or about December 10, 2015, Plaintiff emailed Mr. Parker of PetSmart human resource department to complain of harassment and hostile work environment.

82. Plaintiff received a response from Mr. Parker a couple of days later informing that he would "take care" of the harassing treatment and hostile work environment to which Plaintiff was being subjected

83.  At the end of her shift on Sunday, December 20, 2015, Defendant Jurijevich told Plaintiff that he had scheduled another meeting between them in his office for 8:30 a.m. the next morning, on December 21, 2015.

84.  Defendant Jurijevich declined to provide a reason for the meeting to Plaintiff despite her reasonable request and inquiry.

85.  Based upon their past interaction, the harassment, unequal pay and discrimination to which she was subjected, Plaintiff did not feel comfortable being alone with Defendant Jurijevich in his office.

86.  Plaintiff emailed Mr. Parker in PetSmart's human resource department and the legal team to complain of the hostile work environment to which she was being subjected.

87.  In that email, Plaintiff informed that she was being harassed by Defendant Jurijevich and wanted it stopped immediately; that if the harassment did not stop, she would have little choice but to file a complaint against Defendant Jurijevich.

88.  Plaintiff further informed that in November of 2015 – near the time of Black Friday – she required to go to the emergency room because she felt as though she may be having a heart attack due to the stress caused by Defendants; that she was diagnosed with suffering from a stress reaction; and had received a doctor's note for two (2) days off from work.

89.  Plaintiff, concluded that email informing that she must respectfully decline meeting Defendant Jurijevich in his office.

90.  Plaintiff was caused to suffer an enormous amount of stress the evening of Sunday, December 20, 2015, because she did not believe that PetSmart's human resource department or legal team would have an opportunity to review her email or take action prior to returning to work the next day.

11

91. On December 21, 2015 Plaintiff returned to work and Defendant Jurijevich called her into his office.

92. Plaintiff told Defendant Jurijevich that she would not meet with him in his office. She further informed that she emailed Mr. Parker over the weekend, and wanted to provide him time to review her email.

93. Defendant Jurijevich claimed he did not know who Mr. Parker was and then asked Plaintiff into his office again.

94. Plaintiff again asked the reason Defendant Jurijevich wanted her to come into his office.

95. Defendant Jurijevich now claimed that he wanted to discuss Plaintiff's emails Mr. Parker and PetSmart's legal department even though it was not possible for him to know about those emails prior to Plaintiff informing him that same day.

96. Plaintiff did not feel comfortable being alone with Defendant Jurijevich and refused Defendant Jurijevich's demand that she meet with him in his office.

97. Plaintiff requested that the meeting be postponed until such time as PetSmart's human resource department had an opportunity to review and process her emails and complaint.

98. Defendant Jurijevich then again insisted that she must meet with him in his office which distressed and alarmed Plaintiff.

99. Plaintiff responded this time by informing Defendant Jurijevich that she was going to "clock-out and call the police."

100. Defendant Jurijevich told Plaintiff that he thought she should, "clock out and call the police."

101. Later that day, Plaintiff was told by Mr. Parker that Defendant Jurijevich would not have been informed of her contacting of human resource department since he does not have access to that information.

102.     That same day, Plaintiff went to the local police department and filed a complaint against Defendant Jurijevich for harassment.

103.     Plaintiff informed Mr. Parker that she had filed a complaint against Defendant Jurijevich with the Bridgewater Municipal Court for harassment.

104.     On December 22, 2015, Plaintiff spoke with Mr. Parker and told him that she wanted a transfer because she felt threatened and/or harassed by Defendant Jurijevich.

105.     In her initial communications, Plaintiff informed Mr. Stillman and Mr. Parker that she believed Defendants Hill and Defendant Jurijevich held an unreasonably bias against her.

106.     Mr. Parker refused her reasonable request for a transfer and instead told her that she must meet and confer with Defendant Jurijevich.

107.     When Plaintiff informed that she did not feel comfortable meeting with Defendant Jurijevich, on or about December 22nd, 2015, Mr. Parker informed her that she was terminated effectively immediately for her failing to meet with Defendant Jurijevich.

108.     Mr. Parker stated the reason Plaintiff was fired was due to the fact that she failed to meet with Defendant Jurijevich as instructed in his office even though he was aware of Plaintiff's complaints of harassment and hostile work environment.

109.     On or about December 23, 2015, Plaintiff was contacted by David Neisen and informed that an investigation was being undertaken concerning her allegations.

110.     Thereafter, on or about January 07, 2016, Plaintiff received an email from David Neisen (hereinafter, "Mr. Neisen") on behalf of Defendants stating that the reason she was terminated was due to her failure to follow management instruction over the weekend of December 17 and 18 of 2015.

111.     Mr. Neisen felt it necessary to include in that email that she was not, contrary to what Mr. Parker stated, terminated due to the fact that she complained to human resource department and her failure to meet with Defendant Jurijevich.

112.     Plaintiff did not fail to follow management instructions on December 17 or 18 of 2015 and claims that she did are mere fabrications and falsities.

113.     Mr. Neisen told Plaintiff she did nothing wrong, and did not violate corporate privacy policy.

114.     It is clear that Mr. Neisen felt compelled to include this particular statement into the email in an attempt to provide cover for Defendants' retaliatory termination of Plaintiff based upon her complaint to human resource department and her allegations of a hostile work environment.

115.     Upon information and belief PetSmart's corporate policy prohibits the termination of an employee for opposing, protesting, or complaining about discrimination, workplace harassment or any nature, and/or a hostile work environment.

## FIRST COUNT

### Unlawful Employment Practices under the New Jersey Law Against Discrimination – Retaliation (N.J.S.A. 10:5-12(d))

116.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

117.     Plaintiff opposed, protested, and/or complained about practices and/or acts that are unlawful under the New Jersey Law Against Discrimination and/or PetSmart's corporate policy.

118.     Defendants retaliated against Plaintiff based upon her opposition, protest, and/or complaining of practices and/or acts that are unlawful under the New Jersey Law Against Discrimination and/or PetSmart's corporate policy.

119.     Plaintiff was subjected to retaliation at the time, or after, she opposed, protested, and complained about practices and/or acts that are unlawful under the New Jersey Law Against Discrimination and/or PetSmart's corporate policy.

120.     Defendants retaliated against Plaintiff by failing to promote her; disciplining her, and, ultimately, discharging her.

121.     Plaintiff's opposition, protest, and/or complaining of practices and/or acts that are unlawful under the New Jersey Law Against Discrimination and/or PetSmart's corporate policy resulted in Defendants retaliation against her.

122.     As a result, Plaintiff suffered harm and was damaged.

## SECOND COUNT

### Unlawful Employment Practices under the New Jersey Conscientious Employment Protection Act ("CEPA") – Retaliation (N.J.S.A. 34-19-1 *et seq.*)

123.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

124.     Plaintiff opposed, protested, and/or complained about practices and/or acts that are unlawful under the New Jersey Conscientious Employment Protection Act.

125.     Defendants retaliated against Plaintiff based upon her opposition, protest, and/or complaining of practices and/or acts that are unlawful under the New Jersey Conscientious Employment Protection Act.

126.     Plaintiff was subjected to retaliation at the time, or after, she opposed, protested, and complained about practices and/or acts that are unlawful under the New Jersey Conscientious Employment Protection Act.

127.     Defendants retaliated against Plaintiff by failing to promote her; disciplining her, and, ultimately, discharging her.

128.     Plaintiff's opposition, protest, and/or complaining of practices and/or acts that are unlawful under New Jersey Conscientious Employment Protection Act resulted in Defendants retaliation against her.

129.     As a result, Plaintiff suffered harm and was damaged.

## THIRD COUNT

### Wrongful Discharge

130.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

131.     Plaintiff was wrongfully discharged from PetSmart in violation of public policy for opposing, protesting, and/or complaining about practices and/or acts that are in violation of the public policy of the State of New Jersey and/or PetSmart's corporate policy.

132.     Plaintiff was wrongfully discharged from PetSmart for exercising rights protected by public policy, including but not limited to opposing, protesting, and/or complaining about the practices and/or acts of Defendants.

133.     Plaintiff was wrongfully discharged for declining, opposing, protesting, and/or complaining about being required to perform act(s) which require a violation of public policy, including but not limited to performing work in the absence of equal pay.

134.     Plaintiff reasonably believed that Defendants were acting in violation of he public policy of the State of New Jersey and/or PetSmart's corporate policy.

135.     Plaintiff took action reasonably calculated to prevent Defendants' objectionable conduct.

136.     Plaintiff sufficiently expressed her disagreement and concerns of Defendants' objectionable conduct to PetSmart's human resource department.

137.     As a result, Plaintiff suffered harm and was damaged.

## FOURTH COUNT

**Hostile Work Environment**

138.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

139.    Plaintiff was subjected to an intimidating and hostile work environment on account of sexual harassment by Defendant Jurijevich.

140.    Plaintiff would not have been subjected to sexual harassment but for the fact that she is a woman.

141.    Defendant Jurijevich's sexual harassment was severe and/or pervasive such as to be unreasonable.

142.    Plaintiff's conditions of employment were altered resulting in a working environment that was hostile and/or abusive.

143.    Plaintiff complained about the hostile work environment to PetSmart's human resource department.

144.    Defendants' failed to take reasonable steps to stop, prevent, and/or cure the hostile work environment.

145.    As a result, Plaintiff suffered harm and was damaged.

## <u>FIFTH COUNT</u>

### Discrimination in Violation of 42 U.S.C. § 1981

146.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

147.    42 USC § 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions ofevery kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual Relationship. 42 U.S.C.A. §1981.

148.     Defendants violated the above section by discriminating against Plaintiff, solely due to her race and by retaliating against her for complaints of discrimination, harassment, unequal pay, and hostile work environment.

149.     As a result, Plaintiff suffered harm and was damaged.

## SIXTH COUNT

### Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e *et. seq.*

150.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

151.     This claim is authorized and instituted pursuant to the provisions of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e *et. seq.*, for relief based upon Defendants unlawful employment practices.

152.     Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and/or gender.

153.     Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e to 2000e *et. seq.*, by discriminating against Plaintiff because of her race (African-American) and/or gender (woman).

154.     As a result, Plaintiff suffered harm and was damaged.

## SEVENTH COUNT

### Discrimination in Violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, *et. seq.* ("NJLAD")

155.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

156.     This claim is authorized and instituted pursuant to the provisions of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, *et. seq.* ("NJLAD").

157.     Plaintiff complains of Defendants' violation of her rights under the NJLAD's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, and/or gender.

158.     Defendants engaged in unlawful employment practices prohibited by the NJLAD, by discriminating against Plaintiff because of her race (African-American) and gender (woman).

159.     As a result, Plaintiff suffered harm and was damaged.

## EIGHTH COUNT

### Vicarious Liability

160.     Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

161.     Defendant PetSmart through its employees, Defendants Hill and Jurijevich, participated in unlawful and discriminatory practices against Plaintiff.

162.     Defendant PetSmart is vicariously liable for the actions of its supervisors, team leaders, and managers.

163.     As a result, Plaintiff suffered harm and was damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court to grant the following relief:

A. A declaratory judgment that Defendants engaged in unlawful employment practices prohibited by §42 U.S.C. 1981, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978, and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, *et. seq.*

("NJLAD"), and New Jersey Conscientious Employment Protection Act ("CEPA") – Retaliation (N.J.S.A. 34-19-1 *et seq.*)

B. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

C. Award damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

D. Award Plaintiff compensatory damages;

E. Award Plaintiff punitive damages;

F. Award Plaintiff economic loss;

G. An award of statutory penalties, and prejudgment and post judgment interests;

H. An award of cost and expenses of this action together with Plaintiff's attorneys' and expert fees; and

I. Such other further relief as this Court deems just and proper.


Dated: April 22, 2016          */s/ Christian R Oehm*
                               Christian R. Oehm, Esq. (CO2182)
                               **LINDGREN, LINDGREN, OEHM & YOU, LLP**
                               Bridge Pointe – Bldg. G
                               246 Bridge Street
                               Metuchen, New Jersey 08840
                               *Attorneys for Plaintiff*


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

20

Dated: April 22, 2016                  */s/ Christian R Oehm*
                                          Christian R. Oehm, Esq. (CO2182)
                                          **LINDGREN, LINDGREN, OEHM & YOU, LLP**
                                          Bridge Pointe – Bldg. G
                                          246 Bridge Street
                                          Metuchen, New Jersey 08840
                                          *Attorneys for Plaintiff*

## CERTIFICATION OF SERVICE

      **I HEREBY CERTIFY** that on April 22, 2016, I caused a copy of the Plaintiff's Verified

First Amended Complaint to be served via the Court's ECF system to:

      Thomas J. Rattay, Esq.
      Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
      10 Madison Avenue, Ste. 400
      Morristown, NJ 07960
      *Attorneys for Defendants*

      **I CERTIFY** that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: April 22, 2016                  */s/ Christian R Oehm*
                                            Christian R. Oehm, Esq. (CO2182)
                                          **LINDGREN, LINDGREN, OEHM & YOU, LLP**
                                          Bridge Pointe – Bldg. G
                                          246 Bridge Street
                                          Metuchen, New Jersey 08840
                                          *Attorneys for Plaintiff*

## <u>VERIFICATION</u>

I, JACQUELYN REAVES, being duly sworn, deposes and say:

I am the Plaintiff herein and, as such, I am familiar with the facts and circumstances in this action.  I have read the foregoing Verified First Amended Complaint and know the contents thereof.  The Verified First Amended Complaint is true to my knowledge except as to the matters stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

Dated: _4/15/16_

_Jacquelyn Reaves_
JACQUELYN REAVES